IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES WINANS, ) | Case No. 5:22-cv-1793 |
| ) | |
| Plaintiff, ) | JUDGE JAMES S. GWIN |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |

Plaintiff, James Winans, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Winans challenges the Administrative Law Judge's ("ALJ") non-disability finding, arguing that the ALJ failed to apply proper legal standards in making his residual functional capacity ("RFC") findings.

Because the ALJ failed to apply proper legal standards by failing to adequately articulate on what basis he made his RFC findings, I recommend that the Commissioner's final decision denying Winans's application for DIB be vacated and that Winan's case be remanded for further consideration.

**I.       Procedural History**

On October 16, 2020, Winans applied for DIB. (Tr. 208).[1] Winans alleged that he became disabled on August 15, 2017, due to: (i) diabetes; (ii) hypertension; and (iii) "Back

---

[1] The administrative transcript appears in ECF Doc. 6.

Issues." (Tr. 208, 223). The Social Security Administration denied Winans's application initially and upon reconsideration. (Tr. 122–27, 129–34). Winans requested an administrative hearing. (Tr. 152).

ALJ Louis Aliberti heard Winans's case telephonically on November 5, 2021 and denied Winans's application in a December 22, 2021 decision. (Tr. 87–94, 101–20). In so ruling, the ALJ determined that Winans had the RFC to perform light work, except that Winans "can never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; and he can never work at unprotected heights, or with moving mechanical parts." (Tr. 90–91). On August 29, 2022, the Appeals Council declined further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1–4). On October 6, 2022, Winans filed a complaint to obtain judicial review. ECF Doc. 1.

**II.    Evidence**

    **A.    Personal, Educational, and Vocational Evidence**

Winans was born on May 18, 1961. (Tr. 208). He was 56 years old on the alleged onset day and 60 years old on the date of the date of the ALJ's decision, the end of the period under adjudication.[2] *See* (Tr. 89). He had a high school education but no vocational training. (Tr. 224). And he had past relevant work as a sales manager, which the ALJ determined he could perform. (Tr. 93, 103, 217, 224).

    **B.    Relevant Medical Evidence**

Winans's pre-onset medical history included chronic hypertension and type 2 diabetes, both of which he'd had since May 2014. (Tr. 307). He treated these conditions with medication. (Tr. 303–04). "Arthritis" also appeared on Winans's list of past medical diagnoses. (Tr. 303).

---

[2] The ALJ determined that Winans's date last insured was September 30, 2022. (Tr. 89).

On July 6, 2017, Winans visited Joseph Armao, MD, to follow up on his diabetes. (Tr. 301–02). Winans reported no diabetes-related symptoms, stating that he was compliant with treatment and maintained a "generally" healthy diet. (Tr. 302). He also denied any hypertension-related symptoms. *Id.* His physical examination results were remarkable for a superficial rash and excess weight (309 lbs.). (Tr. 303–04). Dr. Armao noted that Winans's diabetes and hypertension were "[c]ontrolled with current medication." (Tr. 305–06). The records of that visit contained no complaints by Winans regarding back, hip, or knee pain. *See* (Tr. 302). The review of systems contained no indication of any negative findings regarding the musculoskeletal system. *See id.* And the assessment plan contained no course of treatment for the musculoskeletal system. *See* (Tr. 305–06).

On July 11, 2018, Winans returned to Joseph Armao for an annual examination. (Tr. 288). Winans reported no adverse symptoms, noting that he was "semi retired," lived a sedentary lifestyle, complied with his diabetes treatment "some of the time," and followed a "[g]enerally unhealthy diet." (Tr. 289). His physical examination results were remarkable for: (i) high blood pressure; (ii) excess weight (314 lbs.); and (iii) diminished foot sensation. (Tr. 290–92). In the review of systems, was the following: "Musculoskeletal: Negative for back pain and joint pain." (Tr. 289). Upon physical examination, the musculoskeletal system revealed, "Normal range of motion. He exhibits no edema." (Tr. 291). Dr. Armao refilled Winans's medication, instructed Winans to eat a low sodium diet, and "urged compliance." (Tr. 293). And the assessment plan contained no course of treatment for the musculoskeletal system. *See* (Tr. 293–94).

On August 5, 2019, Winans reported to Dr. Armao that his diabetes had worsened. (Tr. 280). Winans reported associated symptoms of blurred vision, fatigue, neuropathy, visual

3

changes, and weight loss. (Tr. 280–81). He reported that he maintained a "generally healthy diet" but only complied with treatment "some of the time" and did not monitor his sugar levels. (Tr. 280). His physical examination results were remarkable for high blood pressure. (Tr. 282–84). Under the review of systems, nothing was entered for the musculoskeletal system; and it was indicated, "All other systems reviewed and are negative." (Tr. 281). Dr. Armao instructed Winans to schedule appointments with an endocrinologist and ophthalmologist. (Tr. 284–86).

On November 11, 2019, Winans reported to Dr. Armao that he was "doing well," with no adverse diabetes-related symptoms. (Tr. 269–70). Winans reported that he was fully compliant with medication, maintained a "healthy diet," and exercised three days per week. *Id.* He also reported nasal congestion. (Tr. 270). His physical examination results were remarkable for nasal congestion. (Tr. 272–73). Under the review of systems, nothing was entered for the musculoskeletal system; and it was indicated, "All other systems reviewed and are negative." (Tr. 270). Dr. Armao refilled Winans's medication, noting that Winans's diabetes and hypertension were "[c]ontrolled with current medication." (Tr. 274). Dr. Armao also took Winans off of his care management team. (Tr. 269).

On May 11, 2020, Winans reported to Dr. Armao that he was "doing okay" but was "having a hard time with his weight since his workout facility has been closed." (Tr. 336). Winans reported mild shortness of breath as an associated symptoms of his hypertension and no diabetes-related symptoms. (Tr. 336–37). His physical examination results were remarkable for appearing obese (295 lbs.). (Tr. 336, 339). Under the review of systems, nothing was entered for the musculoskeletal system; and it was indicated, "All other systems reviewed and are negative." (Tr. 337). Dr. Armao refilled Winans's medication. (Tr. 339–41).

On April 5, 2021, Winans reported to Dr. Armao chronic nasal congestion but no adverse diabetes- or hypertension-related symptoms. (Tr. 371–72). His physical examination results were remarkable for: (i) appearing obese (280 lbs.); (ii) nasal congestion and rhinorrhea; and (iii) a skin rash. (Tr. 371, 374–75). Under the review of systems, nothing was entered for the musculoskeletal system; and it was indicated, "All other systems reviewed and are negative." (Tr. 371). Dr. Armao refilled Winans's medication, noting that Winans's conditions were still under control with his current course of treatment. (Tr. 376–77).

On August 26, 2021, Winans visited Summa Health Barberton Emergency Department, reporting groin pain. (Tr. 393–94). His physical examination results were unremarkable. (Tr. 397–98). The attending physician diagnosed Winans with acute prostatitis and prescribed antibiotics and anti-inflammatory medication. (Tr. 399). Winans was discharged in stable condition with instructions to follow-up with Dr. Armao. *Id.*

On September 16, 2021, Winans reported to Dr. Armao pain in his hip, knee, low back, and shoulders, as well as tingling and numbness in his feet and right thigh. (Tr. 416–17). His physical examination results were remarkable for: (i) appearing obese (267 lbs.); (ii) pain at the bilateral L3-4 paraspinous facets; (iii) tight hamstrings; and (iv) decreased lower back and hip range of motion. (Tr. 418–21). Dr. Armao prescribed gabapentin and ordered x-ray testing. (Tr. 423).

On September 20, 2021, Winans underwent x-ray examination. (Tr. 434–36). The examination results showed: (i) "mild degenerative disc and endplate changes"; (ii) "[m]oderate to severe osteoarthritis of the right hip [and m]oderate osteoarthritis of the left hip"; and (iii) "[m]ild osteoarthritic degenerative changes of the medial compartments." *Id.*

### C. Relevant Opinion Evidence

On January 25, 2021, Lynne Torello, MD, evaluated Winans's physical capacity based on a review of the medical record. (Tr. 124–26). Dr. Torello determined that Winans could: (i) lift and carry 50 pounds occasionally and 25 pounds frequently; (ii) push and pull to the same degree he could lift/carry; (iii) frequently climb ramps and stairs; (iv) never climb ladders, ropes, or scaffolds; and (v) not be exposed to hazards. (Tr. 124–25).

On July 8, 2021, Elizabeth Das, MD, concurred with Dr. Torello's assessment in all but one respect. (Tr. 131–32). Dr. Das additionally found that Winans could only sit, stand, and walk for no more than six hours in an eight-hour workday. (Tr. 131).

### D. Relevant Testimonial Evidence

Winans testified at the administrative hearing that his main barrier to work was pain in his back, hips, knees, and shoulders. (Tr. 105–06, 108). He testified that he experienced daily pain which varied from 8 to 10 out of 10 in severity. (Tr. 106). He testified that he also experienced numbness and a burning sensation in his feet because of his diabetes. (Tr. 115). He testified that he suffered from brain fog, concentration difficulties, memory issues. (Tr. 109, 113–14). And he testified that lacked energy and sometimes needed to sit down due to dizziness and lightheadedness. (Tr. 106–07).

Winans testified that he'd had pain while working as a used car salesman, which he performed until August 2017, but it was tolerable. (Tr. 108). However, Winans testified that there a came a point at which he could not stand and walk enough to attend auctions and wash cars. (Tr. 108–09). After 45 to 75 minutes, his hips started to ache, and he needed to sit. (Tr. 110). And "sometimes," he could not tolerate sitting over an hour before experiencing pain. (Tr. 112).

6

Winans testified that beginning March or April 2021, he started needing to lie down after prolonged standing/walking, which could happen "at least six times a day" for "about an hour." (Tr. 110–11). He testified that he delayed seeking treatment for his pain was "because I was dealing with it, but it seemed to have gotten worse." (Tr. 110). Winans testified his activities of daily living consisted of coffee, sitting around, watching television, tending to his dog, cooking, reading, and napping. (Tr. 107–08, 113).

Vocational expert ("VE") Lynn Smith testified that an individual with the ALJ's hypothetical limitations could perform Winans's past work as a manager of sales, which was skilled work at the light exertional level. (Tr. 114–16). If further limited to work at the sedentary exertion level, the VE testified the individual could work as a document preparer and order clerk. (Tr. 117). The VE testified that off task behavior greater than 10% or more than one absence per month would be work preclusive. (Tr. 116–17).

### III. Law & Analysis

#### A. Standard of Review

The court's review of the Commissioner's final decision denying disability benefits is limited to deciding "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence exists "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion," *Id.* at 406 (internal quotation marks omitted), even if a preponderance of the evidence might support the opposite conclusion. *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020). However, the ALJ's decision will not be upheld when the ALJ failed to apply proper legal standards and the legal error prejudiced the claimant. *Rabbers v. Comm'r SSA*, 582 F.3d 647, 654 (6th Cir. 2009). Nor

will the court uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotation marks omitted).

### B. Step Four - RFC Analysis

Winans argues that the ALJ failed to apply proper legal standards in making his RFC assessment. Winans argues that the ALJ failed to consider the impact of Winans's non-severe impairments of degenerative arthritis of the lumbar spine and osteoarthritis of the bilateral knees. ECF Doc. 7 at 9. Winans argues that the ALJ failed to address his subjective symptom complaint of his "inability to be on his feet for prolonged periods time." *Id.* And Winans argues that the ALJ improperly relied on his lay interpretation of the diagnostic evidence regarding his degenerative disc disease and osteoarthritis, without the benefit of medical opinion evidence regarding what functional limitations could result therefrom. ECF Doc. 7 at 9–10 (citing, among other things, *Stevenson v. Kijakazi*, 5:20CV2688, 2022 U.S. Dist. LEXIS 177942, at *49–50 (N.D. Ohio Sept. 29, 2022)). The Commissioner disagrees. ECF Doc. 12 at 6–16.

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC by considering all relevant and other evidence. 20 C.F.R. § 404.1520(e). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5, at *14 (July 2, 1996). Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *13–14.

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v.*

8

*Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). Nevertheless, an ALJ is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about his symptoms when it is inconsistent with objective medical and other evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 649, 475–76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4, at *15 (Mar. 16, 2016). If an ALJ discounts or rejects a claimant's subjective complaints, she must clearly state her reasons for doing so. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Although Winans's first two arguments lack merit, and his third argument is a close call, I find that the ALJ failed to apply proper legal standards when he failed to articulate logically coherent reasons for rejecting Winans's subjective symptom complaints regarding his ability tolerate prolonged standing. 42 U.S.C. § 405(g); *Blakley*, 581 F.3d at 405. I find no merit in Winans's argument that the ALJ failed to consider his non-severe back and knee impairments. The obligation to consider non-severe impairments can be satisfied by an express reference to SSR 96-8 and a discussion of the functional limitations imposed by the non-severe impairments. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020). Here, the ALJ expressly acknowledged his obligation to consider "all of [Winans's] impairments, including impairments that are not severe." (Tr. 88–89 (citing, among other things, SSR 96-8, 1996 SSR LEXIS 5)). Similarly, the ALJ concluded his Step Two analysis by stating that he "considered all of [Winans's] medically determinable impairments, including those that are not severe, when assessing [Winans's RFC]." (Tr. 90). And the ALJ's summary of the evidence at Step Four included Winans's subjective symptom complaints of knee and back pain. (Tr. 91). That was enough for the ALJ to discharge his obligation at Step Four to consider Winans's non-severe impairments.

Winans's argument that the ALJ failed to consider the extent to which the evidence supported his subjective symptom complaint that he could not tolerate prolonged standing fares no better. As Winans notes, the ALJ found that his alleged need to lie down six times a day was unsupported by the medical record. (Tr. 92). The need to lie down was, according to Winans, in order to relieve the aching hip pain he experienced after being on his feet greater than 45 to 75 minutes. (Tr. 110–11). Thus, the ALJ's rejection of Winans's subjective symptom complaint of the need to lie down was, by necessity, a rejection of his alleged inability to tolerate prolonged standing or walking.

Last is Winans's argument that the ALJ exercised medical expertise he didn't have to determine what functional limitations could be attributable to Winans's back, knee, and hip impairments. Although not framed in such terms, Winans has effectively argued for a remand under *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908 (N.D. Ohio 2008), which interpreted the regulations to require the ALJ to obtain a consultative opinion when "an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 U.S. Dist. LEXIS 122296, at *4 (N.D. Ohio Oct. 21, 2011); *see also Falkosky v. Comm'r of Soc. Sec.*, 1:19-cv-2632, 2020 U.S. Dist. LEXIS 165462, at *14–15 (N.D. Ohio Sept. 10, 2020). Although the precedential value of *Deskin* remains a matter of ongoing debate (which the Commissioner endeavors here to continue) the Court need not intercede. *See Stevenson*, No. 5:20CV2688, 2022 U.S. Dist. LEXIS 177942, at *39–41 (collecting cases); ECF Doc. 12 at 11–14. Two principles remain true regardless of *Deskin*; first, an ALJ is "unqualified to interpret raw medical data and make medical judgments concerning the limitations that may reasonably be expected to accompany such data." *Phelps v. Comm'r of SSA*,

10

No. 1:21-CV-02295, 2022 U.S. Dist. LEXIS 236032, at *29 (N.D. Ohio Nov. 15, 2022) (internal quotation marks omitted), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 8867 (N.D. Ohio Jan. 18, 2023); *see also Deskin*, 605 F. Supp.2d at 912. Second, the ALJ "remains obligated to make a logical bridge between the evidence relied on and the conclusion reached." *McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 U.S. Dist. LEXIS 154307, at *26 (E.D. Mich. Aug. 25, 2017) *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 153979 (E.D. Mich. Sept. 21, 2017).

Before proceeding, some context is necessary to understand why Winans's third argument presents a close question. Despite an adjudication period spanning four years, Winans submitted relatively few medical records to substantiate his disability claim. For nearly all of that four-year period, Winans did not report or receive treatment for back, hip, knee, or shoulder pain. Nor did Winans's physical examination results contain adverse findings concerning his back, hip, knee, or shoulders. There was simply nothing between July 2017 and August 2021 to suggest that Winans had *any* functional limitations stemming from his musculoskeletal system. And what evidence did suggest functional limitations was limited to: (i) Dr. Armao's September 16, 2021 treatment notes; (ii) Winans's September 20, 2021 x-ray test results; and (iii) Winans's testimony at the November 5, 2021 hearing. Neither the treatment notes nor the x-ray test described functional limitations, conveying merely raw data concerning Winans's condition. This being the record upon Winans claimed disability, the ALJ was left to weigh Winans's testimony of what his functional limitations were against an overwhelmingly benign record and two treatment notes the corroborative nature of which was not obvious.

The ALJ acknowledged this reality and determined that the raw medical data could not go so far as to corroborate Winans's testimony. Winans now cries foul, engaging in the same

11

analysis he faults the ALJ for using by arguing that the raw medical data reasonably supports the opposite conclusion. *See* ECF Doc. 7 at 8. It is a rare case that a claimant with nearly no evidence of functional limitations attacks an ALJ decision for wrongly interpreting raw medical data by also interpreting raw medical data. Because I am also unqualified to interpret raw medical data and the ALJ gave little in the way of analysis, I resolve the tension in Winans's favor.

The ALJ ran afoul of the two principles described above when he inferred from the x-ray evidence that Winans's degenerative disc disease and osteoarthritis were present throughout the period under adjudication and impacted him to "some degree" but discounted his subjective complaints because of a lack of treatment history and lack of negative objective exam findings. *See* (Tr. 90, 91–92). The import of Winans's testimony was that, because of hip pain, he could not stand or walk for the length of time required for work at the light exertional level. *See* SSR 83-10, 1983 SSR LEXIS 30, at *14 (1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."). Thus, the ALJ was required to "evaluate whether th[at] statement [was] consistent with objective medial evidence and other evidence." SSR 16-3, 2016 SSR LEXIS 4, at *15. According to the ALJ, the only evidence supporting "some degree" of impairment was the x-ray evidence. But without medical expertise, we cannot say to what extent the x-ray evidence sheds light on Winans's ability for sustained standing or walking. *See Anita Lynn H.-J. v. Comm'r of the SSA*, No. 3:21-cv-025, 2022 U.S. Dist. LEXIS 111893, at *13-14 (S.D. Ohio June 23, 2022) (holding that the ALJ was not qualified to interpret x-ray evidence in functional terms). Nor can we say that Dr. Armao's September 16, 2021 objective exam findings are necessarily inconsistent with pain caused by prolonged standing or walking. *See* (Tr. 420–21). And the lack of treatment history,

12

while inconsistent with the alleged severity of Winans's symptoms, would still leave the question of to what degree the x-ray evidence nevertheless supported Winans's statements, a question the ALJ was not qualified to answer.

By remarking on the recency of Winans's treatment for back, knee, and hip pain and lack of treatment history, the ALJ decision raised a parallel issue – a gap in the evidence. The ALJ proceeded to determine Winans's RFC despite the identified gap in the medical record, without any explanation for why, for example, a consultative examination on the extent to which Winans's recent back, knee, and hip impairments affected his ability to perform work related tasks. 20 C.F.R. § 404.1519a(b); 20 C.F.R. § 404.1520b(b)(2)(iii). However, we are unable to review that determination in the absence of clearly articulated reasons. *See Fleischer*, 774 F. Supp. 2d at 877; *see also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009).

To the extent the ALJ's analysis was reflective of the limited medical record of Winans's conditions, it is understandable there was not much for him to say, given the limited number of medical visits Winans had sought and the benign findings in virtually every visit until the September 2021 visit with Dr. Armao. On the other hand, the ALJ decision contains no analysis of Winans's activities of daily living or other conflicting evidence that might have cast doubt upon his subjective symptom pain complaints. Thus, all the ALJ had, and all the court can examine are: Winans's pain complaints and three x-ray studies. There was no medical analysis of the functional limitations implied by the findings from the x-ray studies by any doctor or other medical professional. And the ALJ's analysis of this issues covered a scant paragraph of his eight-page decision.

The logical gaps in the ALJ's reasoning were not harmless. *Fleischer*, 774 F. Supp. 2d at 877. Winans's claimed tolerance for standing or walking, if credited, would preclude work even

at the sedentary exertional level. *See* SSR 83-10, 1983 SSR LEXIS 30, at *13–14 (stating that work at the sedentary exertional level requires occasional standing and walking, i.e., "no more than about 2 hours of an 8-hour workday"). And the VE was not asked to what extent standing tolerances consistent with Winans's testimony would impact the hypothetical individual's ability to perform work at the sedentary exertional level. *See* (Tr. 115–20). A remand is thus warranted for the ALJ to revisit his RFC findings or, at the very least, for the ALJ to explain the basis for why a consultative opinion, in light of the apparent evidentiary gap in the record, was unnecessary.

## IV. Recommendation

Because the ALJ failed to apply proper legal standards by failing to adequately articulate on what basis he rejected Winans's alleged inability to tolerate prolonged standing or walking, I recommend that the Commissioner's final decision denying Winans's application for DIB be vacated and that Winans's case be remanded for further consideration.

Dated: June 8, 2023

Thomas M. Parker
United States Magistrate Judge

---

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).